UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROLAND J. NAQUIN JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 20-548 |
| MATILDA JACK ET AL. | * | SECTION "H"(2) |

## REPORT AND RECOMMENDATION

Plaintiff Roland J. Naquin, Jr. is a prisoner currently incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.  He filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against eleven defendants: (1) former Terrebonne Parish Sheriff Jerry Larpenter; (2) Terrebonne Parish Criminal Justice Complex Warden Major Bergeron; (3) Terrebonne Parish President Gordon Dove; (4) Louisiana Secretary of Department of Corrections James M. LeBlanc; (5) Richard Neal; (6) Terrebonne Parish Criminal Justice Complex Security Officer Capt. R. Ledet; (7) Terrebonne Parish Criminal Justice Complex Security Officer Lt. R. Picou; (8) Terrebonne Parish Criminal Justice Complex Security Officer Lt. T. Clarke; (9) Terrebonne Parish Criminal Justice Complex Dr. Dicky Haydel; (10) Terrebonne Parish Criminal Justice Complex Kitchen Superintendent Matilda Jack; and (11) inmate Coby Dean.

Plaintiff contends that, among other things, the defendants (1) failed to protect him from attack by inmate/defendant Coby Dean, (2) denied and/or provided inadequate medical care; (3) improperly removed him from classification as trusty; and (4) improperly re-assigned to general population and transferred him to another facility.  He also contends that Lt. Clark was disrespectful when he said plaintiff "was running his mouth," and "looks like he got what he deserved."  Plaintiff also asserts that he should have been taken to the hospital emergency room for immediate treatment on the day of the alleged attack (January 15, 2020), not 22 days later (on

1

February 6, 2020).  ECF No. 1, at 13.  Defendants Larpenter, Bergeron, Ledet, Picou, Clarke, Dove, Haydel, Neal, and LeBlanc filed motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim and argued, among other things, sovereign or qualified immunity and frivolousness under § 1915(e)(2)(B).  ECF Nos. 18, 19, 29.  Plaintiff did not file any Opposition Memorandum to these motions.  These matters were taken under submission and are addressed in this Report and Recommendation.

## I.    <u>BACKGROUND</u>

### A.  <u>Allegations Set Forth in Complaint and Fact Statement</u>

Plaintiff's complaint alleges generally that, at approximately 4:15 a.m. (or 4:50 a.m.) on January 15, 2020, after a verbal confrontation with defendant Coby Dean (another inmate), Dean "blind-sided" plaintiff with a punch to the right side of the face, knocking him unconscious.  ECF No. 1, at 9; No. 7-2, at 1.  Plaintiff was taken to the medical station where he sat on a bench waiting for medical care for three hours and during which time he was in pain and his face continued to swell.  *Id.*  While waiting, after about 2–3 hours, he was given ice to hold on his face.  ECF 7-2, at 1.  Plaintiff contends that that Dr. Dicky Haydel arrived and saw plaintiff between 7:00–7:30 a.m. Plaintiff states that he told Dr. Haydel that the bone on the right side of his face was broken, but Dr. Haydel did not respond.  ECF No. 1, at 9; No. 7-2, at 1–2.  Dr. Haydel performed a 10-minute examination on plaintiff's face, witnessed by Medical Director Richard Neal and nursing staff, during which he flashed a light in plaintiff's eyes and "touched my right cheek in a couple of spots."  ECF No. 1, at 9–10; No. 7-2, at 1–2.  Dr. Haydel told plaintiff that the swelling would get worse.  ECF No. 1, at 9.

After Dr. Haydel's examination, at approximately 8:00 a.m., Officer Martin handcuffed plaintiff, escorted him to his living unit, and told him to pack his stuff because he lost his trusty

status and would be returning to general population.  ECF 1, at 10.  Plaintiff contends that, when he asked Lt. Clark whether he was being written up, he was told "No," but he was "running [his] mouth" and "got what he deserved."  ECF 7-2, at 3.  In contrast, defendant Dean was moved to a minimum-security living area and given trusty roadside litter duty.  ECF No. 1, at 10; No. 7-2, at 13.  The incident report indicates that plaintiff "was the aggressor in the altercation," that he "approached inmate Dean in what appeared to be an aggravated man[ner] by yelling while Dean was trying to work," and "stepped into Dean's personal space . . . ."  ECF No. 7-5, at 1.  A later investigator, however, reviewed video footage of the incident and concluded that plaintiff and Dean were in a verbal disagreement when Dean aggressively attacked plaintiff.  *Id.* at 2.  After the investigation, defendant Dean was charged with second degree battery.  *Id.* at 3.

Plaintiff contends that he continued to have pain and had trouble eating.  After several requests for medical treatment and continued complaints, on January 21, 2020, plaintiff was brought to medical and given an x-ray.  Dr. Haydel read the x-ray as normal.  ECF 1, at 4; 7-2, at 3.  On January 23 and 27, 2020, plaintiff filed grievances complaining that his face was numb and he could feel a break in his facial bones, and he requested to see a doctor at the hospital.  ECF No. 1, at 4; No. 7-5, at 4–5.  Plaintiff was taken to Ochsner's Chabert Medical Center for a CT Scan on February 4, 2020.  He then saw Dr. Haydel again at 7:00 a.m. on February 6, 2020.  ECF No. 1, at 11; No. 7-5, at 2.  Two hours later, at 9:00 a.m. on that same day (February 6, 2020), plaintiff was taken to University Medical Center New Orleans ("UMCNO") where he saw "a team" of doctors and surgeons and had another CT scan.  ECF No. 1, at 11–12; No. 7-2.  Plaintiff testified that the UMCNO doctors indicated that he had lost 80% of the vision in his right eye, had multiple facial fractures and nerve damage, and would require surgery.  ECF No. 1, at 12.  Plaintiff was placed on a pre-operative regime of pain medications and diet, which plaintiff contends the prison

staff changed to Tylenol three times a day.  *Id*. at 12–13.  Plaintiff reports that the nerve damage could impact him for two years or the remainder of his life.  ECF No. 7-2.

### B. *Spears* Hearing Testimony

On June 11, 2020, I conducted a telephone conference in this matter.  Participating via telephone were plaintiff, *pro se*; and William F. Dodd (counsel for defendants Larpenter, Bergeron, Ledet, Picou, and Clark), Brian J. Marceaux (counsel for defendants Gordon Dove, Dr. Dicky Haydel, and Richard Neal), and Renee C. McKay (counsel for defendant James M. LeBlanc).  Defendants Matilda Jack and Coby Dean have not yet appeared in this matter and did not participate in the *Spears* conference.  Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.

### 1. The Defendants

Plaintiff testified that Matilda Jack[1] was not present during the incident and had no role in the delivery of medical care.  Rather, he named her as a defendant because she is the kitchen supervisor and presumably had a role in security for the kitchen.  Mr. Bergeron is the warden of the facility, Mr. Larpenter is the sheriff of the parish, Mr. Dove is the parish president which handles budgeting and staffing for the facility and medical department, and Mr. LeBlanc is the Louisiana Secretary of the Department of Corrections.  Plaintiff stated that he named Mr. Bergeron, Mr. Larpenter, Mr. Dove, and Mr. LeBlanc as defendants based solely on the supervisory positions they hold.  He testified that none of these defendants had a personal role or involvement in the kitchen incident or the delivery of medical care.

---

[1] According to defense counsel William F. Dodd, Ms. Jack is employed by Correctional Food Services.

Capt. Ledet is the officer over security at the facility. Lt. Picou is the head of classification. Neither Capt. Ledet nor Lt. Picou was present before or during the kitchen incident, neither had a role in the provision of medical care nor any personal interaction with the plaintiff after the incident. Plaintiff testified that both Capt. Ledet and Lt. Picou were named because of their supervisory roles as head of security and head of classification at the relevant time. Lt. Clarke is the officer who responded to the kitchen incident but was not present before or during the incident. Lt. Clarke had no role in plaintiff's medical care other than bringing plaintiff to the medical station at the facility.

Mr. Neal is an EMT employed as Medical Administrator at the Terrebonne Parish Criminal Justice Complex. He was not involved in the kitchen incident but was involved in the delivery of medical care. Dr. Haydel is the contract physician that goes to the facility twice a week to treat inmates. He was the physician who rendered medical care to plaintiff after the January 15th incident through February 6, 2020, when he sent plaintiff out to Ochsner/UMCNO.

Colby Dean is an inmate at the facility, and he is the person who hit plaintiff in the face.

### 2. The Alleged Facts

Plaintiff's *Spears* testimony essentially repeated the information contained in his Complaint and Factual Statement, with some minor differences (e.g., he testified that first interaction with Dean occurred at 4:45 a.m. rather than 4:15 a.m.). ECF Nos. 1, 7. Plaintiff did not know that defendant Dean intended to hit him that morning, they had not had any prior altercations, and plaintiff had not reported any concerns about his safety or Dean to prison staff. Plaintiff did not receive a write-up or lose good time credit, though he lost his trusty classification.

After defendant Dean punched plaintiff, he fell to the ground and was unconscious. When he regained consciousness, his nose was bloody, he had a bump on the back of his head, and his

eye and face was bruised and swelling. He was immediately taken to the medical department, but Dr. Haydel did not arrive until 7:00 a.m. that morning. Dr. Haydel performed an exam with a flashlight and asked plaintiff to follow the light with his eyes, presumably a neurological exam. Dr. Haydel did not take an x-ray on that day, but after several complaints, Mr. Neal took the x-ray on January 26th, and Dr. Haydel later interpreted the x-ray as normal. Plaintiff was not given medication despite his complaints of pain.

On February 4, 2020, plaintiff went to Chabert Medical Center for a CT scan, and the radiologist interpreted the CT scan as evidencing facial fractures. He has had several more CT scans "to determine how to surgically correct his face." Plaintiff has been told he will need three surgeries, including a bone graft from his hip. He testified that he has been given ibuprofen and Ensure. He continues to request medical care and pain medications but claims he has not received ibuprofen for approximately a month and now only gets Ensure to supplement his diet.

Plaintiff had served as trusty for a few months before being returned to general population after the January 15th kitchen incident. At the time he was sent back to general population, plaintiff had not been diagnosed with any facial fractures. Defendant Dean was not sent to general population and thus was not housed with plaintiff after the incident.

Plaintiff testified that he filed a grievance about the security in the kitchen and requested that the video footage of the incident be preserved. Following that grievance, he spoke with an internal affairs officer, after which defendant Dean was charged with second degree battery. Plaintiff also filed a grievance about losing his trusty status and "about five" grievances regarding his medical care. He said that, after he sent the letter regarding retention of the video footage, he was no longer able to log-in to the grievance kiosk. Although plaintiff was brought in for follow-up medical care and received subsequent medical treatment and tests (e.g., an x-ray at the facility

and four CT scans – one at Ochsner and three at UMCNO), he was not told that any visit was in response to any grievance.

### 3. Plaintiff's Medical Records

Plaintiff's medical records reflect two Doctors and Nurses Notes from the Medical Department at the Terrebonne Parish Criminal Justice Complex on January 15, 2020. ECF No. 26 (Sealed Medical Record), at 58, 59. Five days later, on January 20, 2020 at 6:00 p.m., plaintiff filled out a Request for Medical Attention form, stating that the right side of his nose was numb, and he thought he had a fracture. *Id*. at 53. Medical personnel reviewed the request and referred plaintiff for an x-ray, which was accomplished the next day, January 21, 2020, at 9:20 a.m. *Id*. Radiologist Dr. Watkins reviewed the x-ray film and issued a report dated January 21, 2020, stating: "No acute fracture identified." *Id.* at 55.

Plaintiff filled out a second Request for Medical Attention form at 6:00 p.m. on Friday, January 24, 2020, stating "I feel my right side cheekbone is broken and I still have nerve damage. . . . I need to go to the hospital to see a doctor." *Id*. at 57. That request was reviewed that evening, noting that the x-ray report indicated "no fracture reported" but plaintiff would be referred to see the doctor. *Id*. The form was reviewed at 6:30 a.m. on Monday, January 27, 2020, and plaintiff was referred to another physician. On that same day, Monday, January 27, 2020, at 6:00 p.m., plaintiff filled out another Request for Medical Attention Form, complaining of "[broken/fractured cheek bone" and asking to see a doctor because it hurt to chew food. *Id*. at 56. Plaintiff was examined on that night's 8:00 p.m. medical pass, which revealed that his right eye was swollen, discolored and "deformation felt to [right] cheek bone." *Id*. Plaintiff was placed on ibuprofen. The note indicated plaintiff would be referred for an x-ray, but a later note reflects that the x-ray had been taken on January 21st with "no fracture found" and that plaintiff was "currently referred

to MD." *Id*. A Doctors and Nurses note dated January 28, 2020 indicates that an x-ray showed no acute fracture, so plaintiff was referred for a CT of face without contrast to rule out zygomatic fracture. *Id*. at 54; *see also id*. at 28. At 1:28 p.m. on January 28, 2020, the CT scan was scheduled at Ochsner Health Systems-Chabert for February 4, 2020. *Id*. at 28, 51.

Plaintiff was taken for a CT scan on February 4, 2020, which revealed "zygomaticomaxillary complex type fracture on the right" and longitudinally oriented fracture right mandibular ramus." *Id*. at 37, 46. Plaintiff was prescribed ibuprofen 800 mg three times a day, Norco 5-325 mg every 6 hours as needed for any additional pain, and a soft diet. *Id*. at 34. The next day, on February 5, 2020, at 9:08 p.m., plaintiff filled out another Request for Medical Attention form stating that his right-side lip, nose and cheek are still numb, and his vision is blurred. *Id*. at 40. On February 6, 2020, a Doctors and Nurses note indicates that the CT scan revealed zygomatic fracture and "will send to University for eval[uation]" and plaintiff "c/o blurry vision." *Id*. at 38. The Medical Department sent that referral request to UMCNO on that same day, February 6, 2020. *Id*. at 42.

Plaintiff filled out another Request for Medical Attention form at 7:00 p.m. on February 9, 2020, complaining of pain in the right side of face and jaw, limited and blurry vision in right eye. Medical staff reviewed the request and indicated that plaintiff was seen at UMCNO, is currently on medication, and has an upcoming appointment for his current complaint. *Id*. at 39. A Louisiana Department of Public Safety and Corrections Transfer Request Form was filled out on February 10, 2020, indicating plaintiff was "c/o care he is receiving," which noted that plaintiff was on ibuprofen and Ultram 50 mg as needed for pain, he had been seen at UMCNO on February 6th and had two pending appointment requests. *Id*. at 26.[2] Plaintiff filled out another Request for Medical

---

[2] Plaintiff's ophthalmology appointment was scheduled for March 31 at 9:00 a.m. and his oral surgery appointment was scheduled for February 28, 2020, at 8:00 a.m. ECF No. 26, at 13, 31.

Attention form at 7:00 p.m. on February 12, 2020, asking for a status update, which reflected that his follow-up appointment was scheduled for the next day, February 13, 2020. *Id*. at 25. Plaintiff had a follow-up appointment at UMCNO on February 13, 2020, which concluded with a plan to have a follow-up appointment in two weeks for surgical planning and prescribed ibuprofen 800 mg every six hours for pain, alternating with Tylenol 500 mg every six hours as needed. *Id.* at 21. On February 27, 2020, at 6:00 p.m., plaintiff filled out another Request for Medical Attention Form indicating that he understood he had been prescribed Ultram[3] but his face still hurts, and he has not received "treatment other than the pain." *Id.* at 14. The review at 6:15 a.m. notes that plaintiff had a follow-up appointment scheduled that morning and could discuss his complaints with his doctor at that appointment. Plaintiff's February 28, 2020 medical assessment notes indicated he was to follow-up with ophthalmology for "evaluation of patient reports of visual disturbance that are unlikely to be related to facial fractures." *Id*. at 7.

Evidently due to COVID-19, plaintiff's surgery has not yet proceeded.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(6) Motions to Dismiss

The Supreme Court clarified the standard for a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is *plausible* on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[4] It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[5] If the "facts" alleged are "merely

---

[3] Plaintiff's medication records reflect that he received Ultram (Tramadol) as need for pain from between February 10 and March 6, 2020. *See* ECF No. 26, at 4, 6, 8–9.
[4] *Twombly*, 550 U.S. at 555.
[5] *Id.* at 557–58; *Iqbal,* 556 U.S. at 678.

consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[6]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[7]   The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[8] When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[9]

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[10]   A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[11]   The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[12]

---

[6] *Iqbal,* 556 U.S. at 678.

[7] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quotation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same) (citations omitted*); see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series* 2007-3, 881 F.3d 933, 944–45 (5th Cir. 2018) (conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

[8] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (court may consider Complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

[9] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

[10] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

[11] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[12] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).

B. **Statutorily Required Screening**

A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing.[13]  Complaints filed by prisoners must be dismissed upon review if they are frivolous and/or fail to state a claim:[14]  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[15]  "A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"[16]  A complaint is frivolous "if it lacks an arguable basis in law or fact."[17]

The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[18]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[19]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under FED. R. CIV. P. 12(e).[20]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[21]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified,

---

[13] 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

[14] 28 U.S.C. § 1915A(b)(1); *see also id.* § 1915(e)(2)(B).

[15] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[16] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).

[17] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

[18] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985).

[19] *Davis*, 157 F.3d at 1005.

[20] *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).

[21] *Spears*, 766 F.2d at 182.

authentic and reliable.[22] "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[23] However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"[24]

After a *Spears* hearing and providing an opportunity to expound the claim, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[25] or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."[26] A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[27] "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[28] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the § 1915(d) standard is not."[29] A prisoner's *in*

---

[22] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992))

[23] *Id.* (citing *Wilson*, 926 F.2d at 482–83; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).

[24] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

[25] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992)

[26] *Moore*, 976 F.2d at 270.

[27] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation omitted).

[28] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[29] *Moore*, 976 F.2d at 269.

*forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time. 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

## III.   **LAW AND ANALYSIS**

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[30]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[31]  Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[32]  A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law,

(2) that occurred under color of state law, and

(3) was caused by a state actor.[33]

In this case, plaintiff's complaint, as expounded by his *Spears* testimony explaining the factual basis of his claims, should be dismissed with prejudice as to Coby Dean pursuant to 28 U.S.C. § 1915(e)(2) and/or 42 U.S.C. § 1997e(c)(1) on the basis that Dean is not a "state actor" as required to state a claim under § 1983.  Likewise, plaintiff's claims against defendants Larpenter, Bergeron, Ledet, Picou, Clark, Dove, LeBlanc, Richard Neal, Dr. Haydel and Jack should be

---

[30] 42 U.S.C. § 1983.
[31] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).
[32] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[33] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

dismissed pursuant to under 28 U.S.C. § 1915(e)(2), 42 U.S.C. § 1997e(c)(1) and/or Rule 12(b)(6). Plaintiff's allegations as to these defendants fail to establish a cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.[34]

## A. Defendant Dean Is Not a State Actor

Plaintiff sued the inmate who punched him in the face, Coby Dean, in this § 1983 action.

Under § 1983, a federal cause of action exists against any person, who, acting under color of state law, deprives another of his constitutional rights.[35]  To state a claim under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.[36]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[37]  For this reason, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[38]

Plaintiff has alleged no facts to support a claim that his fellow inmate's conduct is attributable to the State in any way.[39]  On that basis, numerous cases have held that an inmate is not a state actor or a person acting under the color of state law for purposes of stating a claim under

---

[34] The court must "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel," *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011), *cert. denied*, 565 U.S. 1263 (2012) (quotation omitted); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[35] 42 U.S.C. § 1983; *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 60 & n. 1 (1989).

[36] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978); *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).

[37] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[38] *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (quotation marks omitted).

[39] *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (actions may be attributable to the state if the private citizen is a willful participant in joint activity with a State or its agents).

§ 1983.[40]  Defendant Dean is not alleged to have been acting under color of state law; therefore, a § 1983 claim against him is legally frivolous.[41]

**B.  Plaintiff's Claims Against Larpenter, Bergeron, Ledet, Picou, Clark, Dove, LeBlanc, and Jack Should Be Dismissed**

**1.  Plaintiff Alleges No Facts to Establish Personal or Supervisory Liability**

Eight of the eleven defendants (Larpenter, Bergeron, Ledet, Picou, Clark, Dove, LeBlanc, and Jack) were named as defendants based solely on their supervisory positions.  Initially, plaintiff fails to set forth sufficient facts to establish that defendant Jack is a state actor, as required to state a § 1983 claim against her.[42]  Regardless, plaintiff testified at the *Spears* hearing that none of these defendants was personally involved in any of the alleged acts or omissions upon which his claims are based.  Rather, he named them as defendants based on their supervisory or official responsibilities over the facility.

To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[43]  As stated above, plaintiff has failed to establish that defendants Larpenter, Bergeron, Ledet, Picou, Clark, Dove, LeBlanc, or Jack were personally involved in any acts causing the deprivation of his constitutional rights.  Indeed, plaintiff admitted that none was present prior to or during the kitchen incident, and none had any role in the delivery of medical

---

[40] *See, e.g., Batiste v. Gusman*, 2013 WL 6095833, at *3 (E.D. La. Nov. 20, 2013) ("It is well settled that an inmate involved in a prison fight is not a person acting under color of state law as required for liability under § 1983."*); Bland v. Terrebonne Parish Criminal Justice Complex*, 2009 WL 3486449, at *3 (E.D. La. Oct. 23, 2009) (same); *Butler v. Jenkins*, 450 F. Supp. 574 (E.D. Tenn. 1978) (same).

[41] *See, e.g., McCallup v. Arender*, 2002 WL 31730409 (5th Cir. Nov. 27, 2002) (upholding dismissal of claims against persons not shown to be state actors as frivolous).

[42] *See supra* Section III(A).

[43] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006).

care.  Plaintiff further has failed to establish that a causal connection exists between any alleged

act of these defendants and the alleged constitutional violations.

"There is no respondeat superior liability under section 1983."[44]  Defendants Larpenter,

Bergeron, Ledet, Picou, Clark, Dove, LeBlanc, and Jack therefore cannot be held liable under §

1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible

for plaintiff's injuries were in their employ or under their supervision.[45]  A supervisory official

may be held liable for his subordinates' actions only if the official implemented an unconstitutional

policy that causally resulted in plaintiff's injury.[46]  No such unconstitutional custom, usage, or

policy for which these defendants can be held constitutionally liable has been alleged by plaintiff

in this case, and plaintiff thus fails to state a claim for relief under § 1983.[47]

To the extent plaintiff is purporting to assert claims against these defendants in their official

capacities, such "[o]fficial capacity suits generally represent another way of pleading an action

against an entity of which an officer is an agent."[48]  In other words, an official capacity suit is

essentially a claim against the local governmental body itself.  However, as the United States Fifth

Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983
> for the misconduct of one of its employees, a plaintiff must initially allege that an
> official policy or custom was a cause in fact of the deprivation of rights inflicted.
> To satisfy the cause in fact requirement, a plaintiff must allege that the custom or
> policy served as a moving force behind the constitutional violation at issue or that
> [his] injuries resulted from the execution of an official policy or custom. The
> description of a policy or custom and its relationship to the underlying

---

[44] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1115.

[45] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

[46] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

[47] *Monell*, 436 U.S. at 691–95; *Thompson*, 348 F. App'x at 921–22; *Mouille*, 977 F.2d at 929.

[48] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[49]

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[50]   Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[51]   In this case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom.  Nor does plaintiff allege that any of these defendants served as the policymaker for any policy at issue.  Accordingly, he has failed to state an official-capacity claim.

Plaintiff has thus failed to establish the essential elements of an official capacity claim, a supervisory claim under § 1983, or personal involvement of defendants Larpenter, Bergeron, Ledet, Picou, Clark, Dove, LeBlanc, or Jack in any acts causing the alleged deprivation of his constitutional rights.  Defendants Dove, Haydel, Neal and LeBlanc's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6)[52] are well-founded for these same reasons.  Further, any claim against defendant LeBlanc would be barred by sovereign immunity.[53]   Accordingly, plaintiff's § 1983 claims against Larpenter, Bergeron, Ledet, Picou, Clark, Dove, LeBlanc and Jack should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[54]

---

[49] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).
[50] *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).
[51] *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.
[52] ECF Nos. 19-1, at 4–7; 29-1, at 4–10.
[53] Absent consent, federal courts generally lack jurisdiction over suits against a state by that state's own citizens or citizens of another state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984). Louisiana has not consented (*see* La. Rev. Stat. § 13:5106(A)), and § 1983 does not abrogate state sovereign immunity.  *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).  LeBlanc is Secretary of the Department of Public Safety and Corrections, a state executive department entitled to Eleventh Amendment immunity.  *See Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 313–14 (5th Cir. 1999); *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 556 (5th Cir. 1988).
[54] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1); *see also* FED. R. CIV. P. 12(b)(6).

### 2.   Plaintiff Fails to State a Claim for Failure to Protect

Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."[55]  To establish a violation of this right, a prisoner must show (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the prison official acted with "deliberate indifference to inmate health and safety."[56]  This is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."[57]

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment.[58]  To establish deliberate indifference a plaintiff must show a defendant had actual knowledge of a substantial risk to inmate health or safety,[59] by demonstrating (1) the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official "must also draw the inference."[60]  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."[61]  If the

---

[55] *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

[56] *Williams*, 797 F.3d at 280 (quoting *Farmer*, 511 U.S. at 834).

[57] *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added). " 'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." *Norton*, 122 F.3d at 291; *accord Williams*, 797 F.3d at 281.

[58] *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *accord Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976).

[59] *Id*. at 281.

[60] *Id*. (quoting *Farmer*, 511 U.S. at 837)).

[61] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

court finds that one of the components of the test is not met, it need not address the other component.[62]

Plaintiff has failed to adequately plead that any defendant possessed a culpable state of mind sufficient to establish deliberate indifference to a substantial risk of harm for an alleged failure to protect. He admitted that none of the defendants had knowledge of any of the events alleged to have occurred before, during, or after plaintiff's attack or that the risk was so obvious that the defendants must have known about it. Indeed, plaintiff testified that he himself did not know about the attack before it happened, and he had no prior issues and had not been threatened by defendant Dean before the attack. In short, there is no indication that these defendants' actions were intentional or reckless in the face of known facts of substantial risk.

Accordingly, the motion to dismiss as to any failure to protect claim filed by defendants Larpenter, Bergeron, Ledet, Picou, and Clark[63] should be granted. Further, plaintiff's claims against these defendants and defendants LeBlanc, Dove, Neal, Haydel and Jack for failure to protect should also be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[64]

### 3. Plaintiff Has No Constitutional Property Interest in Custodial Classification or Facility Assignment

Plaintiff has no constitutionally protected interest in a custodial classification.[65] The

---

[62] *Davis*, 157 F.3d at 1005.

[63] ECF No. 18-1, at 2–4.

[64] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1); *see also* FED. R. CIV. P. 12(b)(6).

[65] *Alexander v. Texas Dep't of Criminal Justice*, 951 F.3d 236, 240 (5th Cir. 2020) "prisoners do not have a constitutionally-protected liberty interest in any particular custodial classification.") (citing *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("Inmates have no protectable property or liberty interest in custodial classifications.") (internal quotations and citation omitted); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (same) (citing *Wilson v. Budney*, 976 F.2d 957 (5th Cir. 1992)); *see also Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (finding that administrative segregation without more does not establish a constitutional deprivation). Even when an inmate brings a due process challenge to a custodial reclassification that results in a transfer to lockdown, a prisoner must demonstrate "extraordinary circumstances" by showing that the change in classification "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Alexander*, 951 F.3d at 240 (citing *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (per curiam) (internal quotations and citation

classification of inmates is an administrative function of the prison.[66]   Courts accord great

deference to prison officials' administrative decisions and will not interfere with legitimate

administration without a constitutional violation.[67]   As the Fifth Circuit explained in *McCord v.*

*Maggio*, 910 F.2d 1248 (5th Cir. 1990):

> Classification of prisoners is a matter left to the discretion of prison officials.
> *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983).  As pointed out in *Wilkerson*,
> "[i]t is well settled that '[p]rison officials must have broad discretion, free from
> judicial intervention, in classifying prisoners in terms of their custodial status.'"
> *Wilkerson*, 703 F.2d at 911, citing *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th
> Cir. 1979).  Classification of inmates in Louisiana is the duty of the Louisiana
> Department of Corrections and an inmate has no right to a particular classification.
> *Id.*  Prison officials should be accorded the widest possible deference in the
> application of policies and practices designed to maintain security and preserve
> internal order.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).[68]

"Inmates have a federal right to due process at prison classification ... only if state law

contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign,

and punish inmates."[69]   "Classification of inmates in Louisiana is a duty of the ... [jailer] and an

inmate has no right to a particular classification under state law."[70]   Indeed, Louisiana statutes

place no restrictions on the discretion of officials to establish programs of classification, education,

vocational training and employment opportunities in prisons.  *See* La. Rev. Stat. §§ 15:824(A)(1),

15:829(A) (discretion of DOC); *id.* §§ 15:707(B), 711(B) (discretion of sheriffs).

---

omitted)).  Plaintiff does not allege a re-classification from trusty status to lockdown, or any other "extraordinary
circumstances."

[66] *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).

[67] *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).

[68] *Id.* at 1250-51; *see also Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995) ("Classification of inmates in
Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." (citation
omitted)); *Neals*, 59 F.3d at 533; *Doss v. Calfee*, 2008 WL 112109, at *6 (E.D. Tex. Jan. 9, 2008); *Mozee v. Crowley*,
188 F. App'x 241, 242 (5th Cir. 2006).

[69] *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994); *accord Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir.
1989) (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

[70] *Woods v. Edwards*, 51 F.3d 577, 581–82 (5th Cir. 1995) (citation omitted).

Courts have repeatedly held that an inmate has no protected liberty interest in becoming a trusty.[71]  The Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification."[72]  Accordingly, absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."[73]  Thus, plaintiff has no protectable property or liberty interest in custodial classification or being classified as a trusty.[74]

Likewise, a prisoner has no constitutional right to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another.[75]  Accordingly, plaintiff's complaints of re-classification from trusty status to general population or being moved to another facility are insufficient to state a claim under § 1983.

---

[71] *See, e.g., Thomas v. Jordan*, 2008 WL 4649095, *1 (5th Cir. Oct. 21, 2008) (no constitutionally protected interest is implicated by prison officials' failure to classify inmate as a trusty, depriving him of opportunity to earn good time credits); *Walker v. Buentello*, 149 F. App'x 286 (5th Cir. 2005) (prisoner has no constitutionally cognizable interest in trusty status); *Donaldson v. Ducote*, 112 F. App'x 329, 331 (5th Cir. 2004) (no constitutionally cognizable liberty interest in transfer from trusty status to working cellblock); *Jackson v. Harrison*, 2009 WL 2708109, *2 (W.D. La. Aug. 26, 2009) (prisoner's claim based on denial of trusty status dismissed as legally frivolous).

[72] *Wilkerson v. Stalder*, 329 F.3d 431, 435–36 (5th Cir. 2003) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).

[73] *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted*), abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001).

[74] *See, e.g., Alexander v. Texas Dep't of Criminal Justice*, 951 F.3d 236, 240 (5th Cir. 2020) (for a due process challenge to a custodial reclassification that results in a transfer to lockdown, a prisoner must demonstrate "extraordinary circumstances" by showing that the change in classification "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Thomas v. Jordan*, 2008 WL 4649095, at *1 (5th Cir. Oct. 21, 2008) (no constitutionally protected interest is implicated by prison officials' failure to classify inmate as a trusty, depriving him of opportunity to earn good time credits); *Walker v. Buentello*, 149 F. App'x 286, 2005 WL 2404748, at *1 (5th Cir. Sept. 30, 2005) (prisoner has no constitutionally cognizable interest in trusty status); *Donaldson v. Ducote*, 112 F. App'x 329, 331 (5th Cir. 2004) (no constitutionally cognizable liberty interest in transfer from trusty status to working cellblock); *Jackson v. Harrison*, 2009 WL 2708109, at *2 (W.D. La. Aug. 26, 2009) (prisoner's claim based on denial of trusty status dismissed as legally frivolous); *Pulliam v. Epps*, 2008 WL 4911812, at *1 (N.D. Miss. Nov. 13, 2008) (same); *Inmates, Washington County Jail v. England*, 516 F. Supp. 132, 141 (E.D. Tenn. 1980), *aff'd*, 659 F.2d 1081 (6th Cir. 1981) (both conferral and removal of trusty status are within discretion of jail administrators).

[75] *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Biliski*, 55 F.3d at 162; *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989); *Maddox v. Thomas*, 671 F.2d 949, 950 (5th Cir. 1982).

### 4. Disrespectful or Rude Comments Are Not Constitutional Violations

Rude or insensitive behavior towards prisoners is disgraceful conduct, but it does not alone rise to the level of deliberate indifference.[76]  Moreover, "mere threatening language and gestures" by prison staff, while inappropriate, do not alone violate the Eighth Amendment.[77]  Accordingly, plaintiff cannot premise his § 1983 claim on alleged rude or disrespectful comments by prison personnel.  Accordingly, that claim is subject to dismissal pursuant to Rule 12(b)(6)[78] as well as on the basis of frivolousness and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

### C. Plaintiff's § 1983 Claims Alleging Inadequate Medical Care Against Dr. Haydel and Medical Director Richard Neal

The Eighth Amendment's prohibition against cruel and unusual punishment is the constitutional source of liability where an official demonstrates deliberate indifference to a convicted prisoner's serious medical needs.  In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  A "serious medical need" is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.[79]  Only deliberate indifference, "an unnecessary and wanton

---

[76] *Hollyfield v. Hurst*, 796 F. App'x 817, 820–21 (5th Cir. 2019) (citing *Atkins v. Lofton*, 373 F. App'x 472, 473 n.1 (5th Cir. 2010); *see also Brown v. Plata*, 563 U.S. 493, 510 (2011) ("Prisoners retain the essence of human dignity inherent in all persons.")).

[77] *Hollyfield*, 796 F. App'x at 820–21 (citing *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (citation omitted)); *see also Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859 (5th Cir. 2020) (same).

[78] ECF No. 18-1, at 7.

[79] *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citation omitted).

infliction of pain . . . or acts repugnant to the conscience of mankind," to a serious medical need constitutes conduct proscribed by the Eighth Amendment.[80]

"Deliberate indifference is an extremely high standard to meet."[81]  It "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."[82] It "requires that the defendant act with 'something more than negligence' but 'less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"[83] Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[84]  Further, deliberate indifference cannot be proven through cumulative group acts, but rather, "each defendant's subjective deliberate indifference, vel non, must be examined separately."[85]

To act with deliberate indifference, a prison official must "know[ ] that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."[86]  For example, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,' which fails to give rise to a deliberate-indifference claim."[87]  Thus, a "medical decision" concerning whether to order an X-ray, CT scan, MRI, or similar diagnostic test, "does not represent cruel and unusual punishment."[88]  Likewise, incorrect

---

[80] *Estelle*, 429 U.S. at 105–06; *accord Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976); *Tamez*, 589 F.3d at 770; *Hare*, 74 F.3d at 650.

[81] *Dyer*, 955 F.3d at 506.

[82] *Id.* (citations omitted).

[83] *Cadena*, 946 F.3d at 728 (citation omitted).

[84] *Estelle*, 429 U.S. at 104–05.

[85] *Stewart*, 174 F.3d at 537.

[86] *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Garza,* 922 F.3d at 635 ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.") (citations omitted).  This definition, as articulated by the Supreme Court in *Farmer*, applies to Eighth Amendment medical claims.  *Reeves*, 27 F.3d at 176.

[87] *Dyer*, 955 F.3d at 507 (citation omitted).

[88] *James*, 2007 WL 3341728, at *7 (citing *Estelle*, 429 U.S. at 107).

diagnosis or unsuccessful treatment is insufficient to establish deliberate indifference sufficient to state a constitutional claim.[89]  Similarly, "mere disagreement with one's medical treatment" and "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice" fall short of deliberate indifference.[90]

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.[91]  "First, the deprivation alleged must be, objectively, 'sufficiently serious;' a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."[92]  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."[93]  In addition, plaintiff must establish that defendant possessed a culpable state of mind.[94]

A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[95]  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[96]

---

[89] *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Johnson*, 759 F.2d at 1238–39; *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[90] *See Dyer*, 955 F.3d at 507.

[91] If the court finds that one of the components of the test is not met, it need not address the other component. *Davis*, 157 F.3d at 1005.

[92] *Farmer*, 511 U.S. at 834 (quotation omitted).

[93] *Cooper v. Johnson*, 353 F. App'x 965, 967 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

[94] *Farmer*, 511 U.S. at 838 (citing *Wilson*, 501 U.S. at 298).

[95] *Id.* at 837; *accord Tamez*, 589 F.3d at 770 (citing *Thompson v. Upshur County*, 245 F.3d 447, 458–59 (5th Cir. 2001)).

[96] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 3368 (2010) (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].[97]

"'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."[98]

In this case, plaintiff's pleadings, as expanded by his *Spears* testimony, establish that episodic acts or omissions, as defined in *Hare,* are at issue.[99] Therefore, the "deliberate indifference" standard applies, and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. Plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Plaintiff has alleged facts, confirmed by his testimony and verified medical records, that negate any inference of deliberate indifference by the Terrebonne Parish Criminal Justice Complex medical personnel. Plaintiff does not allege that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard for any serious medical needs.[100] Further, any such allegation would be belied by the medical records.[101] Thus, this is not a situation in which a defendant is alleged to have had knowledge of a serious medical condition and simply ignored it or refused to send plaintiff to a physician or specialist.[102] Rather, this appears to be a case in which an inmate sees a physician

---

[97] *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); *accord Tamez*, 589 F.3d at 770.
[98] *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).
[99] *See Tamez*, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").
[100] *Brewster*, 587 F.3d at 770.
[101] *See supra* Section I(B)(3).
[102] *E.g., Rodrique v. Grayson*, 557 F. App'x 341 (5th Cir. 2014).

and that physician (as well as another physician interpreting the x-ray) unfortunately make an incorrect medical decision.[103]

As plaintiff pled and testified, he was immediately brought to the medical department after being hit in the face, and he was treated by a physician. The physician examined him and told him that his swelling would get worse. When plaintiff's pain continued and he requested additional medical care, the medical personnel immediately sent plaintiff for an x-ray. The radiologist interpreting the x-ray, which was neither defendant Haydel nor Neal, reported "no fracture identified." ECF No. 26, at 55. When plaintiff's pain continued and he requested additional medical care, despite having received the negative x-ray results, defendant Haydel referred plaintiff for a CT scan. Upon receiving the CT results, defendant Haydel immediately referred plaintiff to UMCNO for treatment. ECF No. 26, at 38, 54. Contrary to demonstrating deliberate indifference and ignoring his complaints, between January 15 and February 6, 2020, plaintiff was seen and treated several times, and his testing and treatment escalated in response to his continued complaints.[104]

Contentions like plaintiff's that amount to a mere disagreement with the speed, quality, or extent of medical treatment, or even negligence, do not give rise to a § 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."[105] Here, plaintiff's complaints about his medical care fail

---

[103] *See, e.g., Wilson v. Grimes*, 1017 WL 2375903 (M.D. La. May 31, 2017). While a broken jaw will qualify as a serious medical need, this case does not involve a claim that any defendant knew plaintiff's jaw was fractured and ignored his complaints. Rather, this case involves a physician's failure to properly *diagnose* a broken jaw and a later physician's failure to identify the fracture on an x-ray. *Compare Harris v. Gusman*, 2019 WL 2607214 (E.D. La. May 28, 2019) (parties did not dispute that broken jaw constituted serious medical need) (citing *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)), *with White v. Cooper*, 2009 WL 1230008 (W.D. La. May 5, 2009) (failure to properly diagnose broken jaw is at most negligence, not a § 1983 violation).

[104] *Clark v. Gusman*, 2012 WL 1825306, *4 (E.D. La. Mar. 29, 2012) (three-week delay before seeing doctor not unreasonable for non-emergency care).

[105] *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment

to state a claim of violation of his constitutional rights as necessary to obtain relief under § 1983 because he cannot establish deliberate indifference under the applicable constitutional standard. Thus, plaintiff's complaints about his medical care must be dismissed as frivolous and/or for failure to state a claim for relief[106] and pursuant to Rule 12(b)(6).[107]

### D. Potential State Law Tort/Medical Malpractice Claims

Construed broadly, the facts alleged in plaintiff's complaint could be read to assert a tort claim against defendant Coby Dean and a claim for alleged negligence in the course of plaintiff's medical treatment, i.e., medical malpractice, against Dr. Haydel and/or Mr. Neal.

Under the Louisiana Medical Malpractice Act, "no action for malpractice against a qualified health care provider . . . may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement."[108]  Plaintiff has neither alleged nor provided any evidence that he submitted his claims against any defendant to a medical review panel or that the parties agreed to waive this requirement, as required by the Louisiana Medical Malpractice Act, before he filed his complaint in this court.  Therefore, any medical malpractice claim must be dismissed without prejudice for failure to exhaust administrative remedies.[109]

---

was negligently administered); *accord Rowe v. Norris*, 198 F. App'x 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); *Marksberry v. O'Dea*, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); *Williams v. Browning*, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

[106] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

[107] ECF No. 19-1, at 7–8.

[108] *Hutchinson v. Patel*, 637 So. 2d 415, 419 (La. 1994) (citing La. Rev. Stat. § 40:1299.47).

[109] *Marcel v. Rehabcare Group, Inc.*, 2008 WL 4657258, at *2 (E.D. La. Oct. 20, 2008) (citing La. Rev. Stat. § 40:1299.47(B)(1)(a); La. Code Civ. Proc. art. 933; *Englande v. SmithKline*, 206 F. Supp. 2d 815, 817 (E.D. La. Feb. 8, 2002); *Brister v. Sw. La. Hosp. Ass'n*, 624 So. 2d 970 (La. App. 3d Cir. 1993)); *Williams v. Bristol-Myers Squibb*

Moreover, that state law medical malpractice/negligence claim would more properly be addressed by the state court.  Likewise, as to defendant Dean, any state law tort claim would be purely a state law question that is best and ordinarily left to the state court to decide.  If plaintiff's § 1983 claims are dismissed as recommended above, no possible basis for federal subject matter jurisdiction is reflected from the face of this complaint.  Accordingly, pursuant to 28 U.S.C. § 1367(c) and having balanced the relevant factors of judicial economy, convenience, fairness and comity and considering the early stage of this proceeding, this court should decline to exercise jurisdiction over plaintiff's state law claims and dismiss them without prejudice.

## IV.    CONCLUSION

To the extent that plaintiff asserts a state law tort claim against Dean and state law medical malpractice claims against Haydel and Neal, the purely state law questions are best and ordinarily left to the state court to decide.  Therefore, if plaintiff's § 1983 claims are dismissed as recommended herein, no possible basis for federal subject matter jurisdiction is reflected from the face of this complaint.  Accordingly, pursuant to 28 U.S.C. § 1367(c) and having balanced the relevant factors of judicial economy, convenience, fairness, and comity and considering the early stage of this proceeding, this court should decline to exercise jurisdiction over plaintiff's state law claims and dismiss them without prejudice.

Dismissal of plaintiff's remaining claims is proper pursuant to FED. R. CIV. P. 12(b)(6)[110] and on the grounds of frivolousness and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)

---

*Co.*, 2003 WL 328310, at *1 (E.D. La. Feb. 12, 2003); *Williams v. Notami Hosps. of La., Inc.*, 927 So. 2d 368, 372–73 (La. App. 1st Cir. 2005); *Lewis v. Crossman*, 582 So. 2d 991, 992–94 (La. App. 1st Cir. 1991).

[110] Defendants Larpenter, Bergeron, Ledet, Picou, and Clark; defendants Dove, Neal, and Haydel; and defendant LeBlanc filed Motions to Dismiss pursuant to Rule 12(b)(6) seeking dismissal on the basis that plaintiff failed to state a claim against them, either in their official or individual capacity, and also failed to state a claim on theories of failure to protect, disrespectful treatment, or deliberate indifference.  ECF Nos. 18, 19, 29.  They also raised defenses of sovereign immunity and qualified immunity.  Given the recommendation for dismissal on the grounds articulated herein, this Court need not reach the issue of qualified immunity.

and 42 U.S.C. § 1997e(c)(1). Dismissal without leave to amend is proper because there is no conceivable, non-frivolous federal claim plaintiff could assert against them consistent with the facts alleged in his complaint, as expanded by the information provided at the *Spears* hearing.

## RECOMMENDATIONS

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITHOUT PREJUDICE as to his state law tort and/or medical malpractice claims against Dean, Haydel, and Neal;

IT IS FURTHER RECOMMENDED that all of plaintiff's remaining claims be DISMISSED WITH PREJUDICE as legally frivolous and/or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and/or 42 U.S.C. § 1997e(c)(1), and that defendants' motions to dismiss (ECF Nos. 18, 19, 29) be GRANTED IN PART AND DISMISSED AS MOOT IN PART as stated herein.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[111]

New Orleans, Louisiana, this _____16th_____ day of July, 2020.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[111] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).